[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiffs bring this Three Count Complaint against the City of New Haven and Ralph Mauro, (hereafter Mauro) employed by the Public Works Department who was operating a pay loader on Dickerman St. in said city. A pay loader is a large vehicle, three times bigger than an automobile and weighs about 10 tons. Dickerman St. is a one way narrow street. Mauro was picking up a "Bulk Pile" made up of discarded mattresses, chairs, etc. The cab of the pay loader is 9 feet high. No cones or other warnings had been placed around the pile being worked on. Mauro was awaiting the return of dump trucks to remove further debris contained in the Bulk Pile. A vehicle owned by the plaintiff Tanya Coleman which had pulled up to the curb in front of Bobby Jones mother's house where the plaintiff had driven to pick up tools for repairs that Bobby Jones intended to do on the vehicle owned by Tanya Coleman, (hereafter Coleman). Coleman testified she was operating the vehicle which she brought to a parked position alongside the right curb about two and a half car lengths behind the pay loader. Coleman testified that she was there a short time when the pay loader backed up striking the front of her vehicle. Mauro testified he didn't realize the Coleman vehicle had pulled in behind him. He further testified he did not look back or see who was in the Coleman car. Mauro did not know who was driving the vehicle. Mauro called his dispatcher after the collision, who advised him to call the police. CT Page 7628
One of the allegations of negligence of the complaint is that the defendant Mauro failed to keep a proper lookout. The court finds that the plaintiffs have established by a fair preponderance of the evidence that Mauro was negligent in failing to exercise reasonable care when backing his vehicle, in that he failed to observe others in the use of the highway.
Each plaintiff brought a claim for the injuries they sustained in their respective three counts. The First Count is that of Tanya Coleman, the Second Count is in behalf of Bobby Jones and the Third Count is in behalf of Adomolic Jones unrelated to the other two plaintiffs.
Mauro testified that when backing his pay loader you cannot see directly behind nor see a vehicle directly behind the pay loader with the use of the rear view mirror.
Because it is difficult to get in and out of his cab, the only time Mauro came out of his cab was when the police arrived. The only person he saw was Bobby Jones.
The defendants produced two witnesses to the accident; Theodore Coleman hereinafter ("Teddy") not related to the plaintiff Tanya Coleman, and Willie Cox, hereinafter ("Cox") who worked for the Public Works Department for the City of New Haven for nine years. Teddy and Cox were waiting for the two trucks to return from the dump. Teddy testified that Bobby Jones was sitting in the Driver's seat when he first saw the car which was two car lengths behind the pay loader. Teddy who recognized Bobby Jones went over to the car and he and Bobby Jones conversed for 15 minutes alongside the vehicle. When the dump truck returned he went back to the Bulk Trash Pile. Teddy testified that prior to the impact he did not see anybody else in the car than Bobby Jones. According to Teddy, Bobby Jones had reentered the vehicle on the driver's side. Teddy did not see the impact. Teddy further stated he could not say who was in the vehicle at the time of the impact but that he saw Tanya coming from the apartment shortly after the impact walking to the car where she was talking to Bobby Jones. Teddy testified that the only time he saw Tanya was after the impact. He further testified that at no time did he ever see Adomolic Jones. Teddy testified that the police did not interview him or Cox.
Teddy testified that the first time he spoke to anybody concerning the accident was one week before the Trial more than CT Page 7629 four years after the accident. Cox also had never been interviewed before the Trial date.
Although the two witnesses had not been earlier interviewed by any of the parties, this court finds that their recall of the incident is satisfactory. Teddy Coleman had no financial motive in testifying as he did.
The plaintiffs argue that the court should rely upon the police report identifying the occupants of the car. Although the police report is prima facie evidence; the defendants have rebutted any presumption raised by the police report (Exh. B-1). The plaintiffs Tanya Coleman and Bobby Jones and Adomolic Jones have provided this court with conflicting testimony as to where they were at the time of the accident. Tanya Coleman in her testimony to Dr. Ranieri stated that car was running when she was parked which is contrary to all other evidence adduced at Trial.
The medical report (Exh C) dated May 18, 1993 states "Fortunately, there was no history of significant blunt body/head trauma and no loss of consciousness. Tanya Coleman testified that she struck her head and nose on the steering wheel.
The plaintiffs seek to have the court rely on the police report. The other evidence in the case is contrary as to Tanya Coleman and Adomolic Jones. The court concludes that the plaintiffs Tanya Coleman and Adomolic Jones have not met their burden of proof that there is a causal relationship between the injuries they assert they incurred as a result of this accident.
There is no discrepancy that Bobby Jones was in the Coleman vehicle at the time of the accident.
The defendants persuasively argue that the conflicting testimony must be resolved against the plaintiffs. The plaintiffs provided the court with three different views as to where they sat. There was a conflict as to what was to be repaired on the vehicle of Coleman. The information that the plaintiffs were in the vehicle was given to the Police Officer by the plaintiffs, who was not produced at trial.
Tanya Coleman stated she was unable to return to work after the accident; Adomolic Jones stated that he saw her at work after the accident. Tanya Coleman had a prior accident suffering the same injuries. CT Page 7630
The medical evidence as to Bobby Jones was presented by the report of Dr. Alfred Ranieri. Dr. Ranieri's bill demonstrates the initial visit charge was $325.00 and the remainder of the bill totals $2,199.00. Five office visits at $90.00 each and physio therapy from April 22, through August 19, a period of four months. Dr. Ranieri in addition had follow up evaluations in the amount of $225.00 each in September 1993 and February 1996. Bobby Jones asserts an injury to his right knee and neck and back injury. Dr. Ranieri diagnosed his injuries as a musculoligamentius cervical and lumboscaral sprain, post traumatic headaches and a contusion to his right knee. Dr. Ranieri discharged Bobby Jones on September 8, 1993. X-Rays taken by H.O.M.E. Diagnostic Laboratory for $490.00. The X-Ray report showed no evidence of fracture or dislocation of his knee (see Medical Reports Exh. D-1). At closing argument counsel for the plaintiffs requested the sum of $15,000.00 for Bobby Jones. The total medical expenses incurred by Bobby Jones amounts to $3,189.00. He treated for a period of four months with no residual effects. Accordingly the court enters judgment as to the First and Third Counts in favor of the defendants. Judgement may enter in the Second Count in favor of the plaintiff Bobby Jones for the sum of $13,500.00.
Frank S. Meadow Judge Trial Referee